

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TEXAS

WACO DIVISION

| | |
|---|---|
| JANE DOE, as Next Friend of JOHN DOE,<br>    Plaintiff,<br><br>v.<br><br>KRISTY RAY DIXON, Individually and as an Employee of BLUM INDEPENDENT SCHOOL DISTRICT; JEFFERY SANDERS, Individually and in his Official Capacity as Principal for BLUM INDEPENDENT SCHOOL DISTRICT; and BLUM INDEPENDENT SCHOOL DISTRICT,<br>    Defendants. | §<br>§<br>§<br>§<br>§<br>§   CIVIL ACTION NO. W-14-CV-457<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

### MEMORANDUM OPINION AND ORDER

Plaintiff brings this action under the provisions of Title 42, United States Code, Section 1983 ("§ 1983") as a result of the sexual abuse of her child by a teacher's aide. She additionally asserts state law claims for assault and battery and intentional infliction of emotional distress. Defendants Jeffery Sanders ("Sanders") and Blum Independent School District ("Blum ISD") move to dismiss her complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Having reviewed the parties' briefs, the pleadings, and the applicable legal authority, the Court is persuaded Defendants' motion should be granted.

### I. BACKGROUND

Plaintiff's Amended Complaint asserts the following:

      4.2    BLUM ISD is a school district in Hill County with an approximate enrollment of 400 students.

4.3     DIXON, a 39 year-old mother of three, was employed as a teacher's aide for BLUM ISD during the 2012-2013 school year with various assigned duties for secondary school classes and physical education classes.

4.4     JOHN DOE was a 14 year-old male child in one of DIXON's fall semester physical education classes who was repeatedly sought after by DIXON. The physical education class generally had approximately 10-15 students in attendance on a daily basis. During the fall of 2012, DIXON started acting friendly toward JOHN DOE, requesting he sit by her in classes. There, she began patting his knee and leg, putting her arm around him and having constant physical contact with JOHN DOE. She gave JOHN DOE her cell number and began to text messages back and forth with him.

4.5     DIXON also began sitting by JOHN DOE in the lunchroom while 40-50 students would eat lunch. There, she would put her arm around him and rub his leg. She would bring snacks and food from a nearby convenience store for him. Although DIXON had children at the school, she did not bring them food or snacks. DIXON was also seen kissing JOHN DOE by other students while at school.

4.6     SANDERS received complaints from school employees and students about the repeated inappropriate contacts between DIXON and JOHN DOE. As the complaints continued to mount, SANDERS met with DIXON in early December of 2012. He reprimanded her for going to the store to gets drinks for students. He told her that she needed to put a stop to her behavior with JOHN DOE or that she would lose her job. No written report or action plan was put in place, nor were any steps taken to monitor DIXON's behavior around JOHN DOE or any of the other children. DIXON was not suspended, terminated or even given any form of punishment. JOHN DOE's mother, JANE DOE, was never told of DIXON's behavior, nor was she told of the inappropriate actions with her son despite BLUM ISD policy requiring prompt notification of the parents of any student alleged to have experienced prohibited conduct by a BLUM ISD employee. SANDERS took little or no action to adequately safeguard and protect the wellbeing of JOHN DOE.

4.7     Plaintiff alleges that, in committing such acts/or omissions, DIXON and SANDERS were the agents and employees of BLUM ISD and were each acting within such agency and employment, and acting under the color of state law. Each of Defendants' acts complained of herein amount to unlawful conduct. Furthermore, said conduct committed against JOHN DOE by DIXON was performed intentionally. Further, said acts were committed against JOHN DOE for the sexual gratification of DIXON.

4.8  DIXON called JANE DOE and asked if JOHN DOE would be allowed to attend a movie with DIXON, DIXON's friend, and said friend's child. JANE DOE, being unaware of the prior actions of DIXON, and being under the impression that DIXON was acting as a mentor to JOHN DOE, agreed to allow him to attend the movie. Sexual intercourse occurred for the first time between DIXON and JOHN DOE.

4.9  Nothing changed during the remainder of the semester; and, the behavior continued between DIXON and JOHN DOE. In fact, on JOHN DOE's birthday, in December, DIXON brought him a cupcake to school and gave him gas for his motorcycle. No further meetings or discussions were had with DIXON.

4.10  As the Christmas break approached, DIXON's inappropriate behavior toward JOHN DOE increased. There are hundreds of texts, videos and calls on their cell phones during this time frame showing the level of interaction and involvement between the two.

4.11  Many visits between the two occurred during the holiday break. Sexual intercourse continued to occur between the two on a regular basis, unbeknownst to JANE DOE. All the while, JANE DOE was still unaware of the behavior of DIXON at school with her son and the other student and staff members' concerns.

4.12  On January 6, 2013, a friend of JANE DOE called and told her that there was inappropriate behavior occurring between DIXON and JOHN DOE. JANE DOE, the next day, went to the school and informed them of the call and suspected behavior by DIXON. JOHN DOE was then brought into the office to discuss the events. JOHN DOE confirmed the behavior and interactions to school authorities. JANE DOE was told DIXON had been fired after returning from the break. JANE DOE told school officials that she would first talk with JOHN DOE's father and then call the police. Before JANE DOE could do so, school officials contacted the police.

4.13  DIXON was charged with, and eventually pleaded guilty to, a charge of Improper Relationship Between Educator/Student, a felony of the 2nd degree. She was sentenced, on May 28, 2014, to a ten year deferred adjudication sentence.

Plaintiff's Amended Complaint, pp. 3-6.

## II. MOTION TO DISMISS

When considering a dismissal for failure to state a claim upon which relief may be granted, the Court accepts as true "all well-pleaded facts" and views them in the light most favorable to the plaintiff. See *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004). However, a plaintiff must allege specific facts, not conclusory allegations. *Elliott v. Foufas*, 867 F.2d 877, 881 (5th Cir.1989). Conclusory allegations, as well as unwarranted deductions of fact, are not admitted as true. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir.1992). To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead "enough facts to state a claim for relief that is *plausible* on its face." *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007) (emphasis added); see also *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007), *cert. denied sub nom., Xavier Univ. v. Travelers Cas. Prop. Co. Of America*, 552 U.S. 1182, 128 S.Ct. 1230, 170 L.Ed.2d 63 (2008) and *cert. denied sub nom., Chehardy v. Allstate Indem. Co.*, 552 U.S. 1182, 128 S.Ct. 1231, 170 L.Ed.2d 63 (2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009).

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.*, quoting *Twombly*.

"Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *In re Katrina*, 495 F.3d at 205 (quoting *Twombly*). However, the Court need not accept as true legal conclusions. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Ashcroft v. Iqbal*, at 1949. Only those complaints which state a plausible claim for relief survive a motion to dismiss. *Id*. at 1950. In making this determination, the reviewing court must "draw on its judicial experience and common sense." *Id*. at 1950.

## III. DISCUSSION

Section 1983 creates a cause of action against any person who, while acting under color of state law, causes another to be deprived of a federally protected constitutional right. The statute provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any state . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law, suit in equity or other proper proceeding for redress.
> . . .

Section 1983 was promulgated to prevent ". . . [a government official's] [m]isuse of power, possessed by virtue of state law and made possible only because the [official] is clothed with the authority of state law." *Johnston v. Lucas*, 786 F.2d 1254, 1257 (5th Cir. 1986). *See also Whitley v. Albers*, 475 U.S. 312 (1986) (8th Amendment); *Davidson v. Cannon*, 474 U.S. 344 (1986) (14th Amendment); *Daniels v. Williams*, 474 U.S. 327 (1986) (14th Amendment). Only two allegations are

required in order to state a cause of action under § 1983. "First, the Plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law." Gomez v. Toledo, 446 U.S. 635, 640 (1980); Manax v. McNamara, 842 F.2d 808, 812 (5th Cir. 1988).

The determination of whether a specific claim states the violation of a constitutional right requires analysis of whether the claim is for a violation of "rights locatable in constitutional text." Hernandez v. Terrones, 397 Fed.Appx. 954, **10 (5th Cir. 2010), quoting Castellano v. Fragozo, 352 F.3d 939, 953-54 (5th Cir. 2003) (en banc). School children have a protectable interest in their bodily integrity, which is protected by the due process clause of the Fourteenth Amendment. Doe v. Taylor ISD, 15 F.3d 443, 451-452 (5th Cir.) (en banc), cert. denied sub nom, Lankford v. Doe, 513 U.S. 815, 115 S.Ct. 70, 130 L.Ed.2d 25 (1994). This right extends to occasions when a schoolchild is sexually abused by a school district employee, who was acting "under color" of state law. Id. Abuse which occurs off of school property and when the employee is not acting within the course and scope of his employment does not constitute an act "under color" of state law.

Supervisory officials are not responsible under § 1983 for the acts of their subordinates under a theory of respondeat superior. Liability in such a situation "arises only at the point when the student shows that the official, by action or inaction, demonstrates a deliberate indifference to his or her constitutional rights." Id. at 454. When seeking to hold a supervisory employee liable for the acts of a subordinate, the injured plaintiff must establish that the supervisor was directly involved in the acts which led to the § 1983 injuries or that:

6

> (1) the [supervisor] learned of facts or a pattern of inappropriate sexual behavior by a subordinate pointing plainly toward the conclusion that the subordinate was sexually abusing the student; and
>
> (2) the [supervisor] demonstrated deliberate indifference toward the constitutional rights of the student by failing to take action that was obviously necessary to prevent or stop the abuse; and
>
> (3) such failure caused a constitutional injury to the student.

*Id.*, at 454. "The deliberate indifference standard is a high one. Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference. . . ." *Doe on Behalf of Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 219 (5th Cir. 1998).

Taking as true the allegations of Plaintiff's complaint, the best that can be said is that Sanders was notified of some unspecified "inappropriate" behavior. Nothing in the complaint indicates that Sanders was advised of the details of the relationship between Dixon and John Doe such that he was on notice of inappropriate "sexual" behavior which pointed "plainly toward the conclusion that the subordinate was sexually abusing the student. . . ." *Id*. Nor do the facts as alleged support a conclusion that Sanders was deliberately indifferent to John Doe's constitutional rights by failing to take action. Sanders reprimanded Dixon after learning of some type of "inappropriate" behavior and warned her that she would be terminated if it continued. While the reprimand did not prevent Dixon from eventually initiating sexual intercourse with John Doe, nothing indicates that the intercourse and overt sexual behavior occurred on the school campus. As Dixon was terminated immediately after the Christmas break and Sanders' reprimand came shortly before, there was little opportunity for Dixon and John Doe to continue their activities at school. The most that can be gleaned is that Dixon and John Doe continued to text

and exchange phone calls, neither of which is an activity which could easily be monitored by other school employees or officials. After Dixon was terminated, Sanders first learned of the sexual nature of the relationship between Dixon and John Doe. At that time, he immediately notified the police. There is nothing in Plaintiff's First Amended Complaint to support a claim that Sanders was "deliberately indifferent" toward the constitutional rights of John Doe.

As with supervisory officials, governmental organizations cannot be held liable for the actions of their employees under a theory of *respondeat superior*. School district liability under "§ 1983 requires proof that the [actionable behavior] was the result of the school district's official policy, custom, or practice." *A.W. v. Humble Independent School Dist.*, 25 F.Supp.3d 973, 999 (S.D.Tex. 2013) (citing *Fitzgerald v. Barnstable School Comm.*, 555 U.S. 246, 129 S.Ct. 788, 797, 172 L.Ed.2d 582 (2009)). See *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 2022, 2035-36, 56 L.Ed.2d 611 (1978) ("[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."). Liability of a school district under § 1983 requires proof of the following: "1) a policymaker; 2) an official policy; 3) and a violation of constitutional rights whose 'moving force' is the policy or custom." *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003) (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)). The plaintiff must identify more than the actions of a school district employee, he "must identify a policymaker with final policymaker authority and a policy that is the 'moving force' behind the alleged constitutional violation." *Id*.

8

The court must look to state law to determine whether a particular official has final policymaking authority. _Id._; _see also_ <u>Jett v. Dallas Indep. Sch. Dist.</u>, 491 U.S. 701, 737, 109 S.Ct. 2702, 2723, 105 L.Ed.2d 598 (1989). Under Texas law, the school board is the exclusive policymaking authority for an independent school district. _Id._; TEX. EDUC. CODE §11.151. While a principal may have decision-making authority, the ultimate policymaking body is the school board. <u>Doe on Behalf of Doe v. Dallas Indep. Sch. Dist.</u>, 153 F.3d at 216. As all of Plaintiff's claims against the School District are based upon Sanders' actions, she has failed to state a claim for relief against Blum ISD based upon any policy, custom or practice adopted by the school board.

Plaintiff's claims against Defendant Dixon in her official capacity are likewise subject to dismissal as the sexual contacts with John Doe did not occur on school property or at school events and were not, therefore, under color of state law. _See_ <u>Becerra v. Asher</u>, 105 F.3d 1042, 1047 (5th Cir. 1997) (Although the seduction of the child began at school and the later sexual abuse would not have occurred if the defendant had not first won his trust and affection while serving as his teacher, "the constitutional violation did not extend to the development of trust and affection."). The holding in _Becerra_ serves as another basis for dismissal of the claims against Sanders and Blum ISD. Because the sexual abuse of the child did not occur under color of state law, "there was no state action and no violation of [the child's] constitutional rights. It necessarily follows that, without an underlying _constitutional_ violation, there can be no § 1983 liability imposed on the school district or the individual supervisors." _Id._, at 1047-1048. Accordingly, Plaintiff's claims against

Sanders, Blum ISD, and Dixon in her official capacity under § 1983 shall be dismissed.

Plaintiff's remaining claims are against Dixon for assault and battery and against Dixon and Sanders in their individual capacities for intentional infliction of emotional distress.  Plaintiff's Response to Defendants' Motion to Dismiss did not oppose or otherwise address the state law claims.  Under the Texas Education Code, a plaintiff must give notice to a school district professional employee prior to filing suit which describes the incident from which the claim arose.  TEX. EDUC. CODE ANN. § 22.0513(a).  Plaintiff's complaint makes no assertion that such notice was given in this case.  Additionally, as a professional employee, Sanders is immune from suit because the allegations against him were carried out within the scope of his employment and while acting under color of state law.  TEX. EDUC. CODE ANN. § 22.0511(a).

Further, Plaintiff's election to file suit against Blum ISD bars her state law claims against both Sanders and Dixon. Section 101.106 of the Texas Civil Practice and Remedies Code provides: "The filing of a suit under this chapter against a governmental unit constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against any individual employee of the governmental unit regarding the same subject matter." TEX.CIV.PRAC. & REM. CODE § 101.106(a).  If a plaintiff files suit against both a governmental unit and any of its employees, "the employees shall immediately be dismissed on the filing of a motion by the governmental unit."  TEX.CIV.PRAC. & REM. CODE § 101.106(e).  A school district is included in the definition of governmental unit.  TEX. CIV. PRAC. & REM. CODE § 101.001(3)(B).

Once the individual defendants are dismissed, Plaintiff's claims against Blum ISD must also be dismissed as a school district is only liable for claims arising out of misuse of a motor vehicle. TEX. CIV. PRAC. & REM. CODE § 101.051; <u>A.W. v. Humble Indep. Sch. Dist.</u>, 25 F.Supp.3d 973 (S.D.Tex. 2014). Additionally, the waiver of governmental immunity does not apply to claims "arising out of assault, battery, false imprisonment, or any other intentional tort, . . . ." TEX. CIV. PRAC. & REM. CODE § 101.057(2). Plaintiff's state law claims against both individual defendants, therefore, must be dismissed.

Defendant Sanders has additionally moved to recover his costs and attorney's fees. Section 22.0517 of the Texas Education Code provides: "In an action against a professional employee of a school district involving an act that is incidental to or within the scope of duties of the employee's position of employment and brought against the employee in the employee's individual capacity, the employee is entitled to recover attorney's fees and court costs from the plaintiff if the employee is found immune from liability under this subchapter." As with Defendants' motion to dismiss Plaintiff's state law claims, Plaintiff has not opposed or otherwise addressed Defendant Sanders' request for attorney's fees and costs. His request will, therefore, be granted. Accordingly, it is

**ORDERED** that the Motion to Dismiss Plaintiff's First Amended Complaint filed by Defendants Sanders and Blum ISD is **GRANTED** and all of Plaintiff's claims are hereby **DISMISSED**. It is further

**ORDERED** that Defendant Jeffery Sanders recover from Plaintiff his attorney's fees and court costs which are attributable to Plaintiff's state law claims against him in his individual capacity. Defendant's fee application shall be filed within fourteen

(14) days after entry of judgment pursuant to Federal Rule of Civil Procedure 54(d)(2) and Local Rule CV-7(j). It is further

**ORDERED** that any other motions not previously ruled upon by the Court are **DENIED**.

**SIGNED** this \_\_15\_\_ day of February, 2015.

*/s/ Walter S. Smith*

**WALTER S. SMITH, JR.**
**UNITED STATES DISTRICT JUDGE**